UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


PAUL H. JAWORSKI
and ANN F. JAWORSKI,

      Plaintiffs,

v.                                                    Case No. 8:25-cv-1928-KKM-SPF

INTERNAL REVENUE
SERVICE,

      Defendant.

_____

## ORDER

Paul and Ann Jaworski sue the Internal Revenue Service (IRS)[1] for a refund of an overpayment of their 2020 income tax liability, alleging that the IRS violated the Administrative Procedure Act and the Internal Revenue Code by offsetting the overpayment against the Jaworskis' disputed 2017 and 2018 tax liabilities. *See* Am. Compl. (Doc. 19). The government moves to dismiss the Jaworskis' claims. Mot. (Doc. 20). Because I lack jurisdiction over the Jaworskis' APA claims and claim for a refund, I grant the motion to dismiss.

---

[1] The United States represents that it is "the real party in interest on behalf of the named defendant the [IRS]," Mot. at 2, because "Congress has not authorized citizens to sue the IRS," *We The People v. IRS*, 1996 WL 512382, at \*1 (M.D. Fla. 1996), *aff'd sub nom. We People v. IRS*, 132 F.3d 1459 (11th Cir. 1997); *see Reppert v. IRS*, 418 F. App'x 897, 898 n.1 (11th Cir. 2011) (per curiam) ("Taxpayer named the IRS as defendant but the IRS is not a suable entity."). I treat the action as such.

## I.   BACKGROUND

Plaintiffs Paul and Ann Jaworski are a married couple who contend that the IRS improperly offset their overpayment of federal income tax for 2020 against their disputed liability for two previous tax years. *See* Am. Compl.

In late 2020, the IRS began investigating the Jaworskis' 2017 and 2018 tax returns. On January 25, 2021, the IRS sent the Jaworskis a Notice of Deficiency (NOD) stating that they owed a tax deficiency of $44,629 and an additional $8,925.80 in penalties for the 2017 tax year. *See* (Doc. 19-1) at 3; Am. Compl. ¶ 15. On April 19, 2021, the IRS sent the Jaworskis another NOD in the amount of $9,343 for the 2018 tax year. *See* (Doc. 19-1) at 21. In July 2021, the Jaworskis filed a petition with the United States Tax Court challenging the IRS's deficiency determinations. *See Jaworski v. Comm'r, IRS*, No. 14945-21, Dkt. No. 1 (T.C. July 18, 2021); Am. Compl. ¶¶ 6, 22. That action remains pending.[2] Am. Compl. ¶ 6.

Approximately one month later, in August 2021, the IRS audited the Jaworskis' 2017 tax return and concluded that the Jaworskis owed an

---

[2] The Jaworskis' complaint references a second Tax Court action, *Adminicor Services, Inc. v. Commissioner of Internal Revenue*, No. 14876-21 (T.C. Apr. 28, 2021), in which their tax liabilities were allegedly "in dispute," *see* Am. Compl. ¶ 6. Although a stipulated decision was entered in that case in March 2024, *see id.* Dkt. No. 37, the Tax Court severed the Jaworskis from the action the month beforehand, *id.* Dkt. No. 34. The severed action, *Jaworski v. Commissioner of Internal Revenue*, No. 37958-21 (T.C. Apr. 28, 2021), remains pending.

increased total of $61,949.03 in taxes, penalties, and interest. *See* (Doc. 19-1) at 34–35; *see also* Am. Compl. ¶ 17.

Later in 2021, the Jaworskis filed their 2020 federal income tax return, in which they made an overpayment of $97,630. Am. Compl. ¶¶ 4, 19. On October 4, 2021, the IRS sent the Jaworskis a letter acknowledging their 2020 overpayment, *see* (Doc. 19-1) at 39, and explaining that it had applied $91,563.72 of the overpayment to offset the Jaworskis' outstanding tax liabilities for 2017 and 2018,[3] *see id.*; Am. Compl. ¶ 18. The IRS's letter also stated that it would refund the remaining overpayment balance of $6,066.28 to the Jaworskis. (Doc. 19-1) at 39. In applying the overpayment to offset balances for the 2017 and 2018 tax years, the Jaworskis allege that the IRS entered Transaction Code (TC) 520, i.e., a freeze code, on their accounts for those tax years. *See* Am. Compl. ¶¶ 7, 10, 23–27. On September 7, 2024, the Jaworskis applied for a refund from the IRS. *See* Am. Compl. ¶¶ 4, 13. The amended complaint does not indicate the status of that request for a refund.

The Jaworskis then filed the present action for a refund, asserting three claims against the IRS. First, the Jaworskis allege that the IRS's entry of TC 520 on their accounts constituted a de facto agency rule and thus needed to

---

[3] The IRS's letter states that it applied $61,255.42 of the overpayment to tax owed for 2017, and $30,308.30 to tax owed for 2018. (Doc. 19-1) at 39. Neither party endeavors to explain the delta between these amounts and the IRS's deficiency and audit letters from earlier in the year.

undergo the APA's notice and comment rulemaking procedures. *See* Am. Compl. ¶¶ 40–50. Second, the IRS's "conduct in applying an offset to a refund via an agency action called 'TC 520 hold' without notice-and-comment must be construed as an arbitrary and capricious abuse of discretion." *Id.* ¶ 58. Finally, the Jaworskis allege that the IRS violated 26 U.S.C. § 6402(a) because the "offset of mature debt does not extend to unassessed, stayed, or actively disputed debts of plaintiffs." *Id.* ¶ 61. The Jaworskis seek a declaration that TC 520 violates the APA and 26 U.S.C. § 6402(a), an order requiring the IRS to refund them $91,563.72, and attorney's fees. *See id.* at 11 (Prayer for Relief).

The government moves to dismiss the Jaworskis' complaint in its entirety, *see* Mot.; Reply (Doc. 39), which the Jaworskis oppose, Resp. (Doc. 31).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice

if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion under Rule 12(b)(1) may facially attack a court's jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Such an attack requires that the Court look only to the pleadings to determine "if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* at 1529 (citation modified). If a court finds it lacks jurisdiction, it is "without power to enter judgment . . . and must dismiss the case." *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1023 (11th Cir. 2021).

When considering a 12(b)(6) motion or a facial 12(b)(1) motion, the Court accepts all the "factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Lawrence*, 919 F.2d at 1529 (citation modified).

5

## III.   ANALYSIS

The government moves to dismiss all three of the Jaworskis' claims, arguing first that the IRS permissibly credited the 2020 overpayment against outstanding tax liabilities under 26 U.S.C. § 6402(a). *See* Mot. at 3. Because the offset amount relates to the 2017 and 2018 tax years subject to review in Tax Court, the IRS contends both that the Jaworskis' suit for a 2020 tax year refund is improper and that I lack jurisdiction to hear it. *See id.* at 13–16. Additionally, the government argues that the Jaworskis fail to state a claim for relief under the APA because the IRS's entry of a transaction code did not constitute final agency action, let alone a rule requiring notice and comment. *See id.* at 16–21. Even if it did, the government maintains, the use of the code was not arbitrary and capricious. *See id.* at 21–22. Finally, the government claims that this Court lacks jurisdiction over the APA claims under the Anti-Injunction Act and Declaratory Judgment Act, which both preclude actions that hinder the assessment or collection of taxes. *See id.* at 22–25.

I start first with the jurisdictional arguments about the APA claims before explaining why the governing statutory framework permits the IRS's offset and precludes my jurisdiction over the Jaworskis' claim for a refund.

### A. APA Claims

At the outset, I address the government's position that, even had the Jaworskis plausibly alleged claims under the APA, the Anti-Injunction Act and

6

Declaratory Judgment Act preclude jurisdiction over those same APA claims. Mot. at 22–24. With the Jaworskis' claims properly construed, the government is correct that the APA cannot be used as an end-run around the statutory prohibitions on tax assessment actions or the requirement that such challenges must be brought either before the Tax Court or in refund actions. Thus, the Jaworskis' APA claims must be dismissed for lack of jurisdiction.

I start with the nature of the Jaworskis' APA claims and the requested relief. The Jaworskis' complaint purports to challenge the IRS's action in applying a freeze transaction code, TC 520, to their account to withhold a refund of their 2020 tax year overpayment. *See* Am. Compl. ¶¶ 24, 27. Although the Jaworskis do not explain whether TC 520 applied to, and froze, their account activity for the 2017, 2018, or 2020 tax years (the government indicates that it applied only to 2017 and 2018, *see* Mot. at 17–18), the Jaworskis claim that "TC 520 . . . was the mechanism through which the IRS froze and then offset Plaintiffs' refund—a substantive action with direct financial consequences." Resp. at 12. In other words, "[t]he IRS's *decision* to offset Plaintiffs' overpayment was arbitrary and capricious under 5 U.S.C. § 706(2)(A)." *Id.* at 13 (emphasis added).

The Jaworskis thus request a "declar[ation] that [the] TC 520 rule is violative of the APA" and "[a]n order requiring the Defendants to issue a refund to Plaintiffs for the amount of $91,563.72." Am. Compl. at 11 (Prayer for

Relief). Although the APA provides a limited waiver of sovereign immunity and permits judicial review of final agency action, Section 702 states that "[n]othing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Anti-Injunction Act and Declaratory Judgment Act expressly forbid at least a portion of the requested relief.

The Anti–Injunction Act provides that, but for narrow exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). "The Anti-Injunction Act kicks in when the target of a requested injunction is a tax obligation . . . ." *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209, 218 (2021). Likewise, the Declaratory Judgment Act allows federal courts to issue declaratory judgments "[i]n a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under Section 7428 of the Internal Revenue Code of 1986." 28 U.S.C. § 2201(a) (emphasis added); *see Bufkin v. United States*, 522 F. App'x 530, 533 (11th Cir. 2013) (per curiam) ("[T]he prohibition on entering declaratory judgments regarding federal taxes 'is at least as broad as the prohibition of the Anti–Injunction

8

Act . . . .' " (quoting *Mobile Republican Assembly v. United States*, 353 F.3d 1357, 1362 n.6 (11th Cir. 2003))). Thus, it is "well settled that a declaratory judgment cannot be issued in a tax case." *Horne v. United States*, 519 F.2d 51, 52 (5th Cir. 1975)[4] (per curiam) (holding that a taxpayer's request that a tax deficiency assessment be declared void was impermissible under the Declaratory Judgment Act).

Ultimately, reading these two statutes together "[a]gainst the backdrop of sovereign immunity," the Eleventh Circuit has concluded that "judicial review of IRS determinations is largely circumscribed to entertaining suits for the refund of already-paid taxes." *Christian Coalition of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011); *see also Cypress v. United States*, No. 14-cv-22066-WILLIAMS, 2014 WL 11268558, at *2–4 (S.D. Fla. Dec. 15, 2014) (explaining that the APA's waiver of sovereign immunity is expressly excepted for statutes, like the Anti-Injunction Act and Declaratory Judgment Act, which forbid the requested relief). To the extent that the Jaworskis' APA claims seek declaratory relief or injunctive relief beyond the issuance of a refund, including relief restraining the assessment or collection of taxes, I am without jurisdiction to hear those claims.

---

[4] The Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

9

Of course, the Jaworskis also seek a refund of their overpayment, which appears to flow from their APA claims. Thus, they assert that neither the Anti-Injunction Act nor the Declaratory Judgment Act bars their claims—whether under the APA or the Internal Revenue Code—because "this action is, at its core, a suit for the recovery of an improperly offset tax overpayment—not a suit to restrain assessment or collection." Resp. at 13. Although perhaps true with respect to the Jaworskis' final claim that the IRS violated 26 U.S.C. § 6402(a), *see* Am. Compl ¶¶ 60–61 (Count III), the Jaworskis provide no support for the view that the APA can be used as a vehicle for a refund action.

The APA may not be invoked when Congress has specified other judicial review procedures. Section 703 of the APA states that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute," provided that the statutorily specified review proceeding is not "inadequa[te]." 5 U.S.C. § 703. Relatedly, only "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." 5 U.S.C. § 704 (emphasis added). At bottom, "[Section] 704 does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *accord U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016).

Here, Congress has provided special and adequate review procedures to challenge contested tax liabilities. When a taxpayer receives a notice of deficiency from the IRS, he may first sue in the Tax Court for a redetermination of the deficiency before paying. 26 U.S.C. § 6213(a). Alternatively, district courts have original jurisdiction over civil actions "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected," which requires first that the taxpayer pay the amount. *See* 28 U.S.C. § 1346(a)(1). And the Internal Revenue Code provides for refund actions so long as the plaintiff first requests a refund directly from the IRS. *See* 26 U.S.C. § 7422(a). Because petitioning the Tax Court for review or filing a refund suit under 26 U.S.C. § 7422 provide "an adequate legal remedy," *Bufkin*, 522 F. App'x at 533, the Jaworskis are wrong that their APA claims are only "ancillary to this core refund action." Resp. at 6; *see id.* at 10. Instead, the APA claims directly and improperly "duplicate existing procedures for review of agency action." *Bowen*, 487 U.S. at 903; *see Cohen v. United States*, 650 F.3d 717, 738–39 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (explaining that "[a] party cannot bring a freestanding APA suit" for a tax refund because "the tax refund suit is a statutorily designed judicial procedure for a taxpayer to wrangle with the IRS over taxes, refunds, or the legality of IRS tax collection or refund practices"). To the extent that the APA claims would circumvent the statutorily prescribed Tax Court review or refund procedures in the district

court, I dismiss the Jaworskis' APA claims in Counts I and II without prejudice.[5]

## B. Refund Claim

With the APA claims no longer muddying the waters, this action presents a single claim for the refund of an overpayment of taxes.

The Jaworskis principally allege that, although 26 U.S.C. § 6402(a) permits the IRS to offset an overpayment against an owed tax liability, the "offset of mature debt does not extend to unassessed, stayed, or actively disputed debts of plaintiffs," such as the noticed deficiencies pending before the Tax Court. *See* Am. Compl. ¶ 61; Resp. at 6–11. The government disagrees and argues that the claim must be dismissed because the IRS may credit an overpayment against any liabilities, even unassessed liabilities. *See* Mot. at 6–13. Once the IRS applied the overpaid amount to the 2017 and 2018 tax years, any refund amount became attached only to those years. *See id.* at 14–15. Because those tax years remain before the Tax Court, the government claims that the Jaworskis' refund action is barred. *Id.* at 15–16. The government's

---

[5] Because the Jaworskis may only petition the Tax Court or bring this action as one for a refund, I need not address the parties' arguments regarding whether the IRS's use of transaction code "TC 520" constituted a de facto rule or an otherwise arbitrary and capricious final agency action. I observe only that TC 520, an internal IRS review mechanism for flagging accounts with active litigation, does not bear the hallmarks of final agency action, let alone a rule of general applicability.

12

arguments carry the day, and I also dismiss the refund claim for lack of jurisdiction.

### i. Section 6402(a)

To explain why I am without jurisdiction, it is necessary to first address the IRS's statutory authority to offset under 26 U.S.C. § 6402(a).

"The commonsense interpretation is that a tax is overpaid when a taxpayer pays more than is owed." *United States v. Dalm*, 494 U.S. 596, 609 n.6 (1990). The Secretary then "may credit the amount of [an] overpayment, including any interest allowed thereon, against *any liability* in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person." 26 U.S.C. § 6402(a) (emphasis added); *see* 26 C.F.R. § 301.6402-1 (authorizing the IRS to credit an overpayment "against any outstanding liability for any tax (or for any interest, additional amount, addition to the tax, or assessable penalty) owed by the person making the overpayment . . . ."). Although neither party disputes whether the Jaworskis made an overpayment in 2020, the Jaworskis read "any liability" narrowly to mean only assessed liabilities, as determined by the Tax Court. *See* Resp. at 7–12. Because the Tax Court had not yet assessed their 2017 and 2018 deficiencies, the Jaworskis claim the IRS could not offset an overpayment. *See id.* The statutory text and structure support a different understanding.

13

As relevant here, "[a] deficiency is the amount by which a taxpayer's liability exceeds the liability that he reports on his return, including any applicable penalties." *Kroner v. Comm'r of Internal Revenue*, 48 F.4th 1272, 1274 (11th Cir. 2022) (citing 26 U.S.C. § 6211). "Once the IRS 'determines that there is a deficiency in respect of any [such] tax,' it is 'authorized to send notice of such deficiency to the taxpayer.'" *Id.* (quoting 26 U.S.C. § 6212(a)). "The Commissioner's determination of a tax deficiency is entitled to a presumption of correctness." *Ballard v. Comm'r*, 522 F.3d 1229, 1234 (11th Cir. 2008). A taxpayer may then "file a petition with the Tax Court for a redetermination of the deficiency." 26 U.S.C. § 6213(a). "After a deficiency is determined, the next step is 'assessment,' which formally places the taxpayer's liability on the IRS's books." *Kroner*, 48 F.4th at 1274–75 (citing 26 U.S.C. §§ 6303(a), 6321, 6331).

Nonetheless, a taxpayer "shall, *without assessment or notice* and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed, and shall pay such tax at the time and place fixed for filing the return . . . ." 26 U.S.C. § 6151(a) (emphasis added). Thus, "[a] tax deficiency notice 'merely reminds the taxpayer of his duty to pay a tax debt already due[, it] does not create that liability.'" *United States v. Ellett*, 527 F.3d 38, 40 (2d Cir. 2008) (per curiam) (quoting *United States v. Voorhies*, 658 F.2d 710, 714 (9th Cir. 1981)). The same goes for an assessment. While an assessment "is the act of recording a taxpayer's liability," *see Kroner*, 48 F.4th at 1277, it "is not a

14

prerequisite to tax liability," *Romano-Murphy v. Comm'r*, 816 F.3d 707, 710 (11th Cir. 2016) (citation modified). Indeed, "a taxpayer's 'liability' for unpaid taxes arises before the IRS makes an official 'assessment' of what the delinquent taxpayer owes." *Polselli v. Internal Rev. Serv.*, 598 U.S. 432, 442 (2023).

The Jaworskis' 2017 and 2018 full tax liabilities thus existed "at the time and place fixed for filing the return," 26 U.S.C. § 6151(a), even though the IRS later determined and mailed notice of deficiency, *see Ellett*, 527 F.3d at 40. Through this mailing of a notice of deficiency, the IRS "determined the tax liability with specificity" sufficient "to credit an overpayment against an unassessed tax liability." Rev. Rul. 2007-51, 2007-2 C.B. 573, 2007 WL 2405237, at *1 (2007)[6] ("Pursuant to section 6402(a), the Service may credit an overpayment against unassessed internal revenue tax liabilities that have been determined in a notice of deficiency sent to the taxpayer."). Section 6402(a) therefore authorizes the IRS to offset the Jaworskis' overpayment against the earlier, unassessed tax liabilities.

---

[6] Although I no longer defer to the revenue ruling under *Chevron*, I may credit its persuasiveness to the extent it "accurately reflects [Section 6402(a)'s] plain meaning." *See Fitzgerald Truck Parts & Sales, LLC v. United States*, 132 F.4th 937, 949 (6th Cir. 2025), *reh'g denied*, No. 24-5078, 2025 WL 1512190 (6th Cir. May 21, 2025), and *cert. denied*, 146 S. Ct. 1466 (2026).

Multiple cases interpreting predecessor statutes to Section 6402(a) support this view, or are at least "consistent" with it, notwithstanding the IRS's own view that they "do[] not aid in the interpretation of" Section 6402(a)'s altered language. *See* Rev. Rul. 2007-51, 2007 WL 2405237, at *1. In each case, the IRS credited a taxpayer's overpayment for one year against an unagreed deficiency for another year. And in each, the respective court held that crediting the overpayment was proper so long as the taxpayer's liability for the year of the underpayment was "then due," i.e., if the IRS had issued a notice of deficiency to the taxpayer even though no actual assessment of the deficiency had been made. *See McCarl v. United States*, 42 F.2d 346, 347 (D.C. Cir. 1930) (interpreting Section 284(a) of the Revenue Act of 1926); *Cole v. Helvering*, 78 F.2d 852 (D.C. Cir. 1934) (interpreting Section 322(a) of the Revenue Act of 1928); *Standard Oil Co. (Indiana) v. United States*, 5 F. Supp. 976, 988–89, 991 (Ct. Cl. 1934); *see also Smith v. Dir. of Internal Revenue*, No. 77-8119-CIV-CF, 1977 WL 1217, at *1 (S.D. Fla. July 28, 1977) (dismissing without prejudice a taxpayer's suit for a refund of 1975 tax that had been credited to prior years' deficiencies pending before the Tax Court).

The Jaworskis nonetheless resist application of the offset and maintain that "any liability" in Section 6402(a) cannot mean what it says because "Section 6213(a) provides in mandatory terms that upon the filing of a petition with the Tax Court, 'no assessment of a deficiency and no levy or proceeding in

16

court for its collection shall be made, begun, or prosecuted' until the Tax Court's decision becomes final." Resp. at 7 (quoting 26 U.S.C. § 6213(a)). This view incorrectly equates an offset with the other items listed in Section 6213(a). Rather, as the Tax Court has explained, "Section 6213(a) limits the Commissioner's authority with respect to premature assessments, levies, and in-court collection proceedings, none of which occur[]" when the IRS offsets an overpayment. *Perry v. Comm'r*, 100 T.C.M. (CCH) 321 (T.C. 2010), at \*2; *see id.* ("[A]n offset under section 6402(a) is distinguishable from, and does not constitute, a levy." (citing *Sage v. United States*, 908 F.2d 18, 27 (5th Cir. 1990)). Thus, I agree with the government's view that "Congress did not include the Commissioner's authority to offset credits as an activity to be stayed during the pendency of a case in the Tax Court." Reply at 4.

The Jaworkis' position is also internally inconsistent. Although they assert that the offset's "practical effect is identical to collection," Resp. at 7, they maintain that this is "not a suit to restrain assessment or collection," *id.* at 13. And they offer no authority for the proposition that retention of taxes paid and in the government's possession amounts to an action to collect money still within the taxpayer's control. *Cf. Agility Network Servs., Inc. v. United States*, 848 F.3d 790, 794 (6th Cir. 2017) ("[A]n IRS agent acting in connection with tax collection would be taking an affirmative step to *recover money* owed to the government." (emphasis added)); *Diamond Phone Card, Inc. v. United*

17

*States*, 206 F. Supp. 3d 766, 770 (E.D.N.Y. 2016) ("A taxpayer's overpayment does not create a right to the funds. Rather, the IRS must first determine that the overpayment should become a refund. Only then does the taxpayer have a right to receive the funds." (citation modified)).

Ultimately, the text and structure of the Internal Revenue Code, as well as the weight of authority interpreting it, support the IRS's power to apply overpayments to prior years' liabilities so long as the IRS has determined a deficiency and sent notice of the deficiency to the taxpayer.

### ii.     Federal District Court Jurisdiction

The IRS's exercise of its discretionary authority to offset the Jaworskis' overpayment against prior years' tax liabilities precludes my jurisdiction over the refund action, at least until the Tax Court issues a final decision. I also separately lack jurisdiction because the Jaworskis seek a refund for the incorrect tax year.

Under 26 U.S.C. § 7422(d), "[t]he credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed." At the moment the IRS offset the 2020 overpayment, it became "a payment" with respect to the Jaworskis' 2017 and 2018 liabilities. And the Jaworskis must seek a refund with respect to those years, not the 2020 tax year for which they were already refunded

18

$6,066.28.[7] *See Green–Thapedi v. United States*, 549 F.3d 530, 532 (7th Cir. 2008) ("[W]hen the IRS applies an overpayment as a credit to a liability for a separate tax year, the taxpayer must file a refund claim for the year in which the IRS applied the credit."); *see also Kaffenberger v. United States*, 314 F.3d 944, 959 (8th Cir. 2003) ("Because the overpayments became credits against the 1990 tax liability when the IRS so applied them, we hold that the district court lacked jurisdiction to order a refund of the overpayments from 1994 through 1996 that were credited against the 1990 liability."). This action therefore seeks a refund from the improper tax year.

Additionally, because the Jaworskis petitioned the Tax Court for review of the deficiencies for the 2017 and 2018 tax years, they are barred from filing a refund suit until a "decision of the Tax Court [] has become final." 26 U.S.C. § 6512(a)(1). "When a taxpayer is served with a notice of deficiency, he has two ways to contest his tax liability. He may pay the tax and then sue the government in district court to recover what he claims he should not have paid. Or he can petition the Tax Court and contest his liability there before paying." *United States v. Lezdey*, 448 F. App'x 893, 895 (11th Cir. 2011) (per curiam) (citation modified). Once a taxpayer petitions the Tax Court, Section 6512(a)'s

---

[7] Although the government does not raise it explicitly, an additional jurisdictional problem lurks. A taxpayer must file an administrative claim with the Secretary of the Treasury before bringing a refund suit. 26 U.S.C. § 7422(a). Here, the Jaworskis filed an administrative claim only for the 2020 year. *See* Am. Compl. ¶ 4.

bar is "jurisdictional" and "operates to prohibit *any* action for taxes for that taxable year." *Solitron Devices, Inc. v. United States*, 862 F.2d 846, 848 (11th Cir. 1989). Because the overpayment is treated as a payment with respect to the 2017 and 2018 tax years for which the Jaworskis' petitioned the Tax Court's review, *see* 26 U.S.C. § 7422(d), I lack jurisdiction over this refund action.

### iii.   Tax Court Jurisdiction

Finally, without a remedy currently available here, the Jaworskis express concern that, if I lack jurisdiction, so might the Tax Court. They offer two reasons for this concern, neither of which convinces me.

First, in their telling, the IRS's offset will "circumvent judicial review of disputed liabilities" by the Tax Court because that court is barred from "restrain[ing] or review[ing]" offset determinations in deficiency proceedings under 26 U.S.C. § 6512(b)(4). *See* Resp. at 9–11. But I do not understand the Jaworskis' Tax Court petition to "invoke the tax court's review of," at least directly, the IRS's decision to offset their 2020 overpayment. *Riggins v. Comm'r of Internal Revenue*, 748 F. App'x 970, 974–75 (11th Cir. 2018) (per curiam). Indeed, the Jaworskis petitioned the Tax Court *before* the IRS made any determination as to overpayment of taxes for 2020. *See* Am. Compl. ¶¶ 18, 21–22. The Tax Court appears to share this understanding, concluding that the Jaworskis' "2020 tax year is not properly before the Court in this case." *See*

*Jaworski v. Comm'r Internal Revenue*, No. 14945-21 (T.C. Mar. 22, 2022), Doc. No. 15 at 3; *see id.* at 4 (recognizing it lacks "authority to enjoin respondent from offsetting petitioner's overpayments for tax year 2020 and applying them to petitioners' self-assessed tax liability for tax year 2018"). Instead, the Jaworskis' petition seems to "invoke[] the tax court's express jurisdiction to redetermine the amount of deficiency and to identify any overpayment." *Riggins*, 748 F. App'x at 975. "Nothing in § 6512(b)(4) prevent[s] the tax court from resolving those issues." *Id.*

Second, the Jaworskis rely on *Commissioner of Internal Revenue v. Zuch*, in which the Supreme Court held that the Tax Court lacked jurisdiction over a collection due process proceeding once the IRS had applied the taxpayer's overpayments to zero out the balance giving rise to an IRS levy. *See* 605 U.S. 422, 431–32 (2025). According to the Jaworskis, *Zuch* provides the IRS "a roadmap for evading Tax Court review" by offsetting a taxpayer's disputed liability to zero and then moving to dismiss the Tax Court petition as moot. *See* Resp. at 9 (quoting *Zuch*, 605 U.S. at 442 (Gorsuch, J., dissenting)). The Jaworskis' reliance on *Zuch* fails for several reasons.

To start, *Zuch* implicitly assumes that the IRS *can* offset a disputed, outstanding tax liability. Although the majority and lone dissenter disagreed as to the effect of that offset on the Tax Court's jurisdiction over a due process proceeding related to the placement of a levy on the taxpayer's property,

21

neither questioned the propriety of the offset in the first place. *Compare Zuch*, 605 U.S. at 425, *with id.* at 433 (Gorsuch, J., dissenting). Instead, because the taxpayer-appellee did "not defend[] th[e] portion of the Third Circuit's reasoning" that "the IRS had unlawfully withheld her refunds and used them to offset her tax liability" under Section 6402(a), the Court simply "decline[d] to consider it as an alternative ground for affirmance." *Id.* at 428 n.1.

Next, *Zuch* dealt only with the Tax Court's review of a due process hearing related to the IRS's placement of a " 'levy upon all property and rights to property' belonging to the taxpayer." *Id.* at 425 (quoting 26 U.S.C. § 6331(a)). "Had the IRS offset Zuch's overpayments against her tax bill without pursuing a levy, Zuch's only option would have been to sue for a refund." *Id.* at 430. That is effectively the case here. The IRS did not place a levy on the Jaworskis' property, and thus the Jaworskis petitioned the Tax Court not for review of a collection hearing, but to challenge a deficiency and audit redetermination for the 2017 and 2018 tax years. *See* Am. Compl. ¶¶ 15–17, 21–22. Were the IRS to zero out the Jaworskis' disputed liability, as they fear, they do not explain why a "postdeprivation suit for a refund" could not then be filed in this Court. *See Zuch*, 605 U.S. at 432.

Lastly, the IRS moved to dismiss the Tax Court proceedings as moot in *Zuch*. *See id.* at 427. Neither party alleges that the IRS has done, or will do, the same in the Tax Court proceedings here.

Ultimately, contrary to the Jaworkis' concern, they allege that the Tax Court *is* reviewing their petition to determine deficiencies for the 2017 and 2018 tax years. *See* Am. Compl ¶¶ 6, 29–30. And as the government acknowledges, *see* Mot. at 16, a favorable Tax Court decision would release the Jaworskis' frozen overpayment: "[I]f the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year . . . the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer." 26 U.S.C. § 6512(b)(1); 26 C.F.R. § 301.6512-1(d) (same); *see* 26 U.S.C. § 6611(a) (authorizing interest on overpayments). To the extent that the Jaworskis continue to dispute any overpayment at that point, they "may then perfect [their] claim for a refund of the overpayment of [their 2020] taxes and invoke the jurisdiction of this Court." *Smith*, 1977 WL 1217, at *1. Until that time, however, the Jaworskis' claim for a refund must be dismissed for lack of jurisdiction.

## IV.   CONCLUSION

The Jaworskis concede that "this action is, at its core, a suit for the recovery of an improperly offset tax overpayment." Resp. at 13. In other words, this is a refund action. Because Congress has prescribed special procedures to seek a refund from the IRS, the APA does not provide additional remedies.

Additionally, Section 6402(a) permits the IRS to offset the Jaworskis' overpayment against unassessed liabilities. Because the Jaworskis petitioned for review of those liabilities in the Tax Court, at this time I lack jurisdiction to review their claim for a refund.

Accordingly, the following is **ORDERED**:

1.  The United States' Motion to Dismiss (Doc. 20) is **GRANTED.**

2.  The Amended Complaint (Doc. 19) is **DISMISSED WITHOUT PREJUDICE.**

3.  The Clerk is directed to **ENTER JUDGMENT**, which shall read: "This case is dismissed without prejudice."

4.  The Clerk is further directed to **TERMINATE** any pending motions, deadlines, and hearings, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, July 14, 2026.


Kathryn Kimball Mizelle
United States District Judge

24